**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| IAN CUYPERS, | ) |
| | ) |
| Plaintiff, | ) Case No. 24-cv-743 |
| | ) |
| v. | ) |
| | ) |
| SUPERIOR POLICE DEPARTMENT | ) |
| OFFICERS JUSTIN TAYLOR, TAYLOR | ) |
| GAARD, SGT. MATTHEW BROWN, and | ) |
| CITY OF SUPERIOR, | ) |
| | ) JURY DEMAND |
| Defendants. | ) |

## COMPLAINT

Plaintiff IAN CUYPERS, by and through his attorneys, the PEOPLE'S LAW OFFICE, for his Complaint against Defendants Superior Police Department Officers JUSTIN TAYLOR, TAYLOR GAARD, SGT. MATTHEW BROWN, and CITY OF SUPERIOR, states as follows:

### INTRODUCTION

1. On February 28, 2024, an ordinary night driving for DoorDash turned into a nightmare for Plaintiff Ian Cuypers when Superior Police Department officers unnecessarily escalated a routine traffic stop until an officer tased Plaintiff, who was unarmed, non-threatening, and attempting to comply with the officers' commands. The encounter caused Plaintiff excruciating pain and profound terror, and because multiple officers needlessly pointed their guns at him, he feared that he would be killed. Numerous Superior Police Department Officers were standing nearby, yet did nothing to stop the attack, and instead joked around afterward. Defendant Officer Justin Taylor attempted to cover up the officers' wrongdoing by charging Plaintiff for obstructing a police officer without probable cause to do so, causing Plaintiff to endure the further suffering of an unjustified criminal prosecution.

1

2. Plaintiff files this civil rights action to bring the Defendants' misconduct to light, to hold the Defendants accountable for their actions, and to seek justice for the injuries he suffered.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims arising under Wisconsin state law.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

5. Plaintiff Ian Cuypers is a 22-year-old man who currently resides in Denver, Colorado.

6. Defendants Justin Taylor, Taylor Gaard, and Sgt. Matthew Brown, at all times relevant to this action, were Superior Police Department (SPD) officers employed by the City of Superior. They are being sued in their individual capacities.

7. These Defendants, at all times relevant to this action, were acting under color of law, were carrying out their duties as SPD officers, and were acting within the scope of their employment with the City of Superior.

8. Defendant City of Superior is a Wisconsin municipal corporation and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

## FACTUAL ALLEGATIONS

9. On February 24, 2024 around 10:15 PM, Plaintiff Ian Cuypers was delivering food for DoorDash in an area of Superior, Wisconsin, he was unfamiliar with when he accidentally made a wrong turn down a one-way street and was pulled over by Defendant Justin Taylor, a probationary SPD officer who had finished field training just two days prior.

10. Plaintiff immediately pulled over and began searching for his insurance paperwork in his glove compartment.

11. Defendant Taylor called for backup.

12. Within minutes, Defendant Officers Taylor Gaard and Sgt. Matthew Brown, and non-defendant officers Jason Moen and Dylan Crist, arrived on the scene.

13. Defendants Taylor, Gaard, and Brown all drew their firearms and pointed them at Plaintiff's vehicle, despite lacking any basis to believe that Plaintiff was armed or posed a threat or that he had committed anything more than a minor traffic violation.

14. Defendant Taylor ordered Plaintiff to exit his car, and Plaintiff complied.

15. Multiple officers began shouting instructions at Plaintiff.

16. Plaintiff attempted to comply with the officers' commands, but because multiple officers were shouting, the commands were confusing and difficult for Plaintiff to understand and obey.

17. Plaintiff was also confused and scared because he did not know what was going on or why the officers were behaving so aggressively, and, although he could not see clearly, he suspected that the officers were pointing guns at him.

18. Plaintiff nevertheless complied with Defendants' orders to back towards them with his hands over his head.

19. At some point, Defendant Brown ordered Plaintiff to get down on his left knee.

20. Plaintiff, confused and scared, asked for an explanation of what was going on, but Defendants refused to explain.

21. Instead, Defendant Gaard threatened Plaintiff, yelling, "Do it now, or you're going to get tased!"

22. Seconds later, before Plaintiff had an opportunity to comply, Defendant Gaard fired her taser at Plaintiff twice, striking him in his back and legs.

23. Plaintiff experienced the worst pain he had ever felt in his life, screamed in agony, and collapsed to the ground, striking his chin on the pavement.

24. As multiple officers swarmed in to handcuff him, Plaintiff sobbed and said "I want to go home" and "I'm going to die here."

25. While Plaintiff was incapacitated on the ground, in the process of being handcuffed, Defendant Gaard threatened Plaintiff again, shouting "Don't move or you're going to get tased again!"

26. At the time Defendant Gaard fired her taser, Plaintiff was unarmed, had not made any threatening movements or vocalizations, was complying with the officers' orders to the best of his ability, and was located several yards away from the officers with his hands up.

27. Defendants Taylor and Brown were both standing near Defendant Gaard when she tased Plaintiff. They each witnessed Plaintiff being tased, had the duty and opportunity to intervene to prevent Plaintiff from being injured, yet failed to do so.

28. After Plaintiff was handcuffed, officers ordered him to stand up, but he told them, panicked, "I can't feel my legs!" Plaintiff gave the officers permission to lift him up.

29. Officers leaned Plaintiff against the back of a squad car to remove the taser probes.

30. Plaintiff again asked why this was happening but the officers refused to tell him.

31. Defendant Taylor then placed Plaintiff in the back of his squad car.

32. While Plaintiff was waiting in the squad car, Officers Gaard, Taylor, Moen, and Crist joked around about completing Plaintiff's DoorDash delivery and going viral on TikTok.

33. That night, Defendants Gaard and Brown both told Defendant Taylor that he did everything right and gave Defendant Taylor instructions regarding what charges to pursue against Plaintiff.

34. Defendant Taylor told Defendant Gaard that the only charge he could think of was "resisting;" Defendant Gaard reminded Defendant Taylor to also charge Plaintiff for the cause of the initial traffic stop.

35. Defendant Taylor expressed that he thought he had to charge Plaintiff with something because force was used.

36. Defendant Taylor drove Plaintiff to the local jail and issued him tickets for driving the wrong way on a one-way street and resisting or obstructing a police officer, despite lacking probable cause to believe Plaintiff committed the latter offense.

37. Defendant Taylor then released Plaintiff from custody without booking him into the jail and drove Plaintiff back to his car.

38. Despite the absence of probable cause for the resisting or obstructing charge, Defendants pursued the charges against Plaintiff all the way to trial in an attempt to cover up their wrongdoing.

39. Plaintiff experienced stress and anxiety as the criminal prosecution hung over his head for months, and was particularly stressed about the possibility of receiving a criminal conviction for the charge of resisting or obstructing an officer, as it was more serious than a minor traffic ticket, and Plaintiff had no criminal record.

40. On July 16, 2024, a jury acquitted Plaintiff of resisting or obstructing a police officer.

41. As a direct and proximate result of Defendants' actions, as detailed above, Plaintiff suffered, *inter alia*, bodily injury, pain and suffering, mental distress, anguish, fear, humiliation, loss of income, and medical expenses.

42. In addition to the excruciating pain and mortal terror he experienced during the incident, the incident has continued to negatively impact Plaintiff's life ever since.

43. In the immediate aftermath, Plaintiff had a painful bruise on his chin from where he hit the street, and he suffered muscle pain and soreness for several weeks.

44. For weeks following Defendants' assault, Plaintiff experienced chest pain, causing him to fear that he was going to have a heart attack, for which he sought medical treatment.

45. Medical examinations revealed that Plaintiff's blood pressure after the incident was elevated; previously Plaintiff always had low blood pressure.

46. After the incident, Plaintiff began for the first time to regularly experience painful migraine headaches which continue to this day.

47. In addition, Plaintiff has received a diagnosis of Post Traumatic Stress Disorder related to the incident, for which he is receiving ongoing therapy and has been prescribed medication.

48. Because of his trauma from the event, Plaintiff no longer felt safe living in the Superior area and was forced to uproot his life and move to Denver, Colorado.

49. The move required Plaintiff to give up a job he enjoyed at Peace of Mind, a community services organization that provides support to adults with disabilities in Duluth, Minnesota.

50. In addition, because of Defendants' assault Plaintiff now experiences extreme distress while driving, particularly at night, and as a result is no longer able to drive for DoorDash.

51. Plaintiff lost another job he enjoyed at a landscaping company in Denver because he had to travel back to Wisconsin to defend himself at his criminal trial, causing him to miss work and resulting in his termination.

52. In sum, Defendants' wholly unjustifiable and unnecessary use of force and subsequent malicious prosecution have had a profoundly damaging impact on Plaintiff, a harmless individual who committed at most a simple driving error.

## LEGAL CLAIMS

### COUNT I – 42 U.S.C. § 1983
### Excessive Force

53. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

54. Count I is alleged against all Defendant Officers.

55. As described in detail above, the Defendant Officers used unreasonable and excessive force against Plaintiff when they tased and/or pointed their firearms at Plaintiff in violation of Plaintiff's right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures.

7

56. As a direct and proximate result of the misconduct described in this Count, Plaintiff suffered physical and emotional injuries and damages as set forth above.

### COUNT II – 42 U.S.C. § 1983
### Failure to Intervene

57. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

58. Count II is alleged against all Defendant Officers.

59. All Defendant Officers, acting individually, jointly, and/or in conspiracy, had the opportunity, duty and ability to intervene on behalf of Plaintiff to prevent the uses of excessive force set forth above, but failed to do so, and thereby caused the Fourth Amendment violation and injuries to Plaintiff as set forth above.

### COUNT III – State Law Claim
### Indemnification

60. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

61. Count III is alleged against Defendant City of Superior.

62. Wisconsin law, Wis. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable for acts within the scope of their employment.

63. At all times relevant to this action, the Defendant Officers committed the acts alleged above in the scope of their employment with Defendant City of Superior.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff Ian Cuypers requests that this Court enter judgment in his favor and against Defendants Superior Police Department Officers Justin Taylor, Taylor Gaard, Sgt. Matthew Brown, and City of Superior, awarding compensatory damages, attorneys' fees,

and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: October 24, 2024                    Respectfully submitted,

/s/ Nora Snyder
Nora Snyder, IL Bar No. 6336790
Ben H. Elson, IL Bar No. 6286106
Brad Thomson, IL Bar No. 6327694
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070
norasnyder@peopleslawoffice.com
ben@peopleslawoffice.com
brad@peopleslawoffice.com

*Attorneys for Plaintiff Ian Cuypers*