IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

IAN CUYPERS,

     Plaintiff,

                             Case No:  24-CV-743

v.

SUPERIOR POLICE DEPARTMENT
OFFICERS JUSTIN TAYLOR, TAYLOR
GAARD, SGT. MATTHEW BROWN and
CITY OF SUPERIOR,

     Defendants.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendants Justin Taylor, Taylor Gaard, Sergeant Matthew Brown, and the City of Superior submit this Response in opposition to Plaintiff's Motion for Partial Summary Judgment. (Dkt. 38). Plaintiff's motion should be denied in its entirety. The undisputed facts, the body-worn camera footage, and controlling Seventh Circuit law demonstrate that no Fourth Amendment violation occurred—and even if there were a violation, the officers are entitled to qualified immunity.

Because the material facts—including the video evidence—confirm that the officers acted reasonably throughout this rapidly evolving high-risk stop, summary judgment should be entered for Defendants, not Plaintiff. (*See* Dkt. 31).

## INTRODUCTION

Plaintiff's motion is premised on a fundamentally inaccurate portrayal of both the facts and the governing law. Plaintiff insists that he was "unarmed, non-threatening, and not actively resisting"

and therefore that any use of a Taser was per se unconstitutional. But the record—including the objectively reliable videos, contradicts this oversimplified narrative.

Within seconds of the stop, Plaintiff made multiple furtive movements inside the vehicle, prompting a reasonable request for backup and causing officers to treat the stop as high risk. After exiting, Plaintiff repeatedly failed to follow direct commands, including the simple directive to face away from officers, keep his hands on his head, and go to his knee. He continued turning toward officers, moving his arms, and "target-glancing," a well-recognized pre-assault indicator. Despite multiple warnings, Plaintiff continued failing to comply until Officer Gaard deployed a limited Taser cycle to safely gain control.

Because the undisputed facts confirm that Plaintiff's noncompliance created a reasonable threat perception and justified the limited amount of force used, Plaintiff cannot establish any constitutional violation. And even if he could, he has not identified any clearly established law that would have alerted a reasonable officer that using a Taser in these circumstances was unlawful.

For the reasons explained more fully below, and as explained in Defendants' brief in support of their motion for summary judgment, (Dkt. 31), the Defendants are entitled to judgment as a matter of law. As such, Plaintiff's motion must be denied, and summary judgment granted for Defendants.

## STATEMENT OF FACTS

Any additional facts necessary to support this response are stated in Defendants' statement of proposed findings of fact ("PFOF") that were filed with Defendants' Motion for Summary Judgment. (Dkt. 33).

## LEGAL STANDARD

Summary judgment must be granted if the movant shows that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56. When video evidence is available, the Court must view the facts "in the light depicted by the videotape." *Scott v.*

*Harris*, 550 U.S. 372, 380–81 (2007). *See also Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) ("We will not indulge stories clearly contradicted by the footage."). Defendants' brief emphasizes this principle throughout. (*See* Dkt. 31 at 3–4).

## ARGUMENT

**I.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE TASER CLAIM.**

> **A.     Plaintiff's motion relies on information unavailable to the officers at the time and improperly invites the Court to evaluate the use of force with the benefit of hindsight.**

Plaintiff's motion repeatedly relies on facts that were unknown to the officers at the time of the Taser deployment in an effort to frame the encounter as involving an "unarmed," "non-threatening," compliant DoorDash driver who "accidentally" turned the wrong way on a one-way street and who was merely "searching for insurance paperwork." (Dkt. 39 at 1-2). But none of these characterizations were known to the officers during the rapidly unfolding stop. The Fourth Amendment does not permit courts to evaluate an officer's use of force based on information learned later; rather, the analysis must be based solely on what a reasonable officer could perceive at the time.

As the Seventh Circuit has made clear courts assess the totality of the circumstances "from the perspective of a reasonable officer on the scene not with the benefit of hindsight. *Manery v. Lee*, 124 F.4th 1073, 1079 (7th Cir. 2025) (*quoting Graham*, 490 U.S. at 396). To do so, courts must consider "the information known to the officer at the time of the encounter; the duration of the encounter; the level of duress involved; and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances." *Id.* (*quoting Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020). Courts "must remember that field encounters often require law enforcement officers to make split-second decisions in quickly unfolding, highly stressful situations." *Manery* at 1079.

Here, Plaintiff highlights after-the-fact facts—such as that he was a DoorDash driver, that his wrong-way turn was accidental, that he was unarmed, that he did not intend harm, that he was confused, and that no one else was in the car—to portray the encounter as innocuous. (Dkt. 39 at 2-3, 6, 13-15). But the officers did not have this information at the time, nor were they required to assume benign explanations. Officers at the scene saw only: (1) a driver making furtive movements inside the cabin of a vehicle immediately upon being stopping by law enforcement; (2) a driver who repeatedly failed to follow commands during a high-risk stop; (3) a driver who repeatedly turned toward officers despite warnings and orders not to; (3) a driver who refused to go to his knee after multiple commands; (4) a driver who engaged in target glancing indicative of potential imminent assault or flight; and (5) a nighttime environment with limited visibility, where the presence of weapons or other occupants could not be ruled out. (Dkt. 33, PFOF # 9, 14, 19, 39-59).

Plaintiff's motion improperly invites the Court to rely on after-acquired, hindsight-driven details that officers had no way of knowing—such as his intent, occupation, lack of weapons, or subjective state of mind. This is precisely the type of hindsight review that *Graham* forbids. The Supreme Court has stressed that the reasonableness inquiry must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Plaintiff's argument that he was "unarmed" is particularly misplaced. Officers did not know whether Plaintiff was armed until after he was Tased. The Seventh Circuit repeatedly holds that the mere fact a suspect is later discovered to be unarmed does not retroactively render the use of force unreasonable. *See, Sherrod v. Berry,* 856 F.2d 802, 806 (7th Cir. 1988). Courts also hold that same evidence to be irrelevant to the use of force analysis (*see id.*) making Plaintiff's hindsight-driven narrative legally irrelevant. The Court must evaluate the officers' decision based solely on what was

visible, knowable, and reasonably perceived between the initiation of the stop and the moment the Taser was deployed—not what Plaintiff or the officers learned afterward.

Correcting for Plaintiff's improper use of hindsight, the undisputed facts confirm that a reasonable officer in this situation could have perceived a threat, could have concluded that Plaintiff was not complying, and could have believed that force was necessary to safely control the subject during the stop.

### B.    Plaintiff misstates the governing Fourth Amendment standard by isolating a single moment rather than assessing the totality of the circumstances.

Plaintiff repeatedly frames the issue as if the only relevant instant is the final seconds before Officer Gaard's Taser deployment. (Dkt. 39 at 12). But the Supreme Court recently rejected this "moment-of-threat" rule. *Barnes v. Felix* (2025). As Defendants explained:

> [T]he Court cannot narrow the totality-of-the-circumstances inquiry to focus on only a single moment. It must look to any relevant events coming before.

(Dkt. 31 at 14–15). Plaintiff's entire argument collapses under *Barnes*: The officers—including Gaard were entitled to consider his earlier movements, refusals to comply, target-glancing, and proximity to them. Plaintiff's brief invites the Court to ignore the very conduct that triggered heightened officer safety concerns in the first place. Plaintiff made undisputed, furtive movements inside the vehicle— behavior that any reasonable officer would immediately interpret as a potential effort to access or conceal a weapon. Those movements were the reason backup was called and they necessarily informed how officers evaluated every subsequent action once Plaintiff exited the vehicle. Plaintiff cannot surgically separate his behavior inside the car from his behavior outside of it simply because it undermines his narrative. The law requires that the officers' perception of the situation be assessed based on the totality of the circumstances, including the initial furtive movements that transformed what might otherwise appear benign into potentially dangerous, ambiguous conduct. *See Barnes* at 1358.

**C.     The use of a Taser was objectively reasonable under *Graham*.**

All three *Graham* factors support Defendants—not Plaintiff.  Although the initial wrong-way violation was minor, the relevant inquiry is what occurred leading up to the use of force. By the time Gaard deployed the Taser, Plaintiff had repeatedly refused lawful commands, creating probable cause for obstructing under Wis. Stat. § 946.41(1). (*See* Dkt. 31 at 9–10, 20).

Moreover, the video and undisputed facts establish: (1) Plaintiff made furtive movements inside the vehicle; (2) Plaintiff repeatedly turned toward officers despite commands to face away; (3) Plaintiff repeatedly lowered or moved his hands despite being instructed to keep them on his head; (4) Plaintiff engaged in "target-glancing"—a known pre-assault indicator recognized in SPD training; (5) Plaintiff closed distance toward officers during commands; (6) it was nighttime, on a dark street, and officers did not know if Plaintiff was armed. As Defendants explained:

> Officers need not be absolutely sure of the nature of the threat… the Constitution does not require certitude before self-protection.

(Dkt. 31 at 9–10(*citing Anderson v. Russell*)).

Unlike even the plaintiff in *Cyrus*, Cuypers was not merely noncompliant; he escalated the encounter through repeated furtive movements inside the vehicle, by lowering and moving his hands despite clear commands, by repeatedly engaging in "target glancing"—a recognized pre-assault indicator suggesting that a suspect is looking for an avenue to attack officers while closing distance toward officers. (Dkt.. 33, PFOF # 14-19, 39-46, 49-53, 56, 74-75).

Finally, although Plaintiff attempts to rely on his smaller stature (Dkt. 39 at 3) to downplay any threat, an officer's safety assessment cannot hinge on relative size when there is a reasonable concern that a suspect may be armed.

**D.     Under controlling Seventh Circuit law, an officer may use a Taser when facing noncompliance and threat indicators.**

While a taser is "more than a de minimis application of force," the Seventh Circuit recognizes that it occupies a middle position on the non-lethal force continuum, well below baton strikes, beanbag rounds, or other impact weapons. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 726 (7th Cir. 2013). Courts consistently hold that deploying a taser against an actively resisting or potentially assaultive individual is reasonable and does not violate clearly established law. *See Clarett v. Roberts*, 657 F.3d 664, 674–75 (7th Cir. 2011) (upholding multiple taser deployments where defendant used taser three times on plaintiff when she blocked the doorway to her son's bedroom after several officers had entered and defendant heard a commotion in the bedroom and believed officers needed help); *United States v. Norris*, 640 F.3d 295, 303 (7th Cir. 2011) (taser use reasonable where suspect refused commands and his conduct suggested potential violence). Defendants' brief explains: "The law does not require officers to wait for violence to materialize before acting." (Dkt. 31 at 9–10).

### E.     Even if the use of force was mistaken, it was at worst a reasonable mistake— not a constitutional violation.

The Supreme Court repeatedly instructs courts not to second-guess split-second decisions during tense encounters. *See Graham; Plumhoff; Sheehan; Mullenix.* Officer Gaard here made a limited, proportionate decision to use a non-lethal Taser cycle after repeated refusals to follow commands and observing potentially assaultive behavior. No reasonable jury could find this was excessive force.

## II.     EVEN IF THE COURT FINDS A CONSTITUTIONAL VIOLATION, DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Plaintiff identifies no case—let alone a factually analogous one—clearly establishing that an officer may not use a Taser during a high-risk stop when a subject repeatedly refuses commands, turns toward officers, and exhibits pre-assault indicators. Defendants' qualified immunity discussion (Dkt. 31 at 12–16) explains: (1) General statements of law (e.g., "unreasonable searches and seizures are unlawful") are insufficient; (2) Courts must define the right with specificity; (2) Cases like *Abbott, Jacobs,*

and *Cyrus* involve starkly different factual contexts; and (3) Officers are entitled to "breathing room to make reasonable but mistaken judgments."

By contrast, this case does not resemble the cases cited by Plaintiff *Abbott*, *Skube, Wendricks, England, Wielepski,* or *Ferguson.* In *Abbott,* for example, the plaintiff was nonresistant because she had already been tased once (which she did not challenge), but then was tased again while lying on the ground and not moving or otherwise responding to an officer's commands. *See* 705 F.3d at 732.

Plaintiff's reliance on *Skube v. Williamson*, 2015 WL 890363 (C.D. Ill. 2015), is similarly misplaced because the circumstances in *Skube* bear no resemblance to those presented here. In *Skube*, the court emphasized that Deputy Koester had already conducted an "ocular pat-down" of the plaintiff immediately upon her exit from the vehicle, visually inspecting her for weapons and concluding she had none; the court therefore found that any possible threat was "essentially neutralized." *Id.* at *8. The only other potentially threatening person—the driver—had been fully secured in the squad car and was being monitored by another officer, rendering the scene static, controlled, and low-risk. *Id.* The court further concluded that the video contradicted the deputy's testimony that Skube posed a threat and showed she was at most "verbally belligerent," not physically noncompliant or unpredictable. *Id.* On that basis, the court held that the encounter was simply "not the kind of tense, uncertain, and rapidly evolving situation" requiring split-second decision-making. *Id.*

By contrast, none of those stabilizing factors existed here: no officer had visually cleared Plaintiff for weapons; it was nighttime with limited visibility; Plaintiff made multiple furtive movements, repeatedly turned toward officers, removed his hands from his head, and refused commands to kneel; and no individual—driver or passenger—had been secured. Moreover, the video in this case corroborates, rather than contradicts, the officers' safety concerns. Thus, the foundational

reasons why the court found the use of a Taser unreasonable in *Skube* are absent here, making that decision wholly inapplicable to the facts of this case.

In *England v. City of Plymouth*, No. 3:20-CV-759 JD, 2022 WL 17176820, at *3 (N.D. Ind. Nov. 23, 2022), Plaintiff was arrested outside his home pursuant to two arrest warrants for failure to appear at a costs and fines hearing. *Id.* The court considered the following factors under the *Graham* framework to hold that under Plaintiff's assertion of facts he was not resisting or dangerous:

> Officer Emenhiser did not tell Mr. England he was under arrest. Officer Emenhiser said nothing in response to Mr. England's statement that he would go look for his paperwork. Mr. England walked quickly toward the house but did not run. Officer Emenhiser did not tell him to stop. Officer Emenhiser did not warn Mr. England he would be tased and was, in fact, totally silent until tasing him. At no time did Mr. England resist or threaten Officer Emenhiser.

*Id.* The court therefore declined to grant summary judgment to the officer on his use of the taser. *Id.*

Similarly, in *Wendricks v. Serres*, No. 20-CV-1189-PP, 2022 WL 3700887, at *8 (E.D. Wis. Aug. 26, 2022), the court simply held that a dispute of fact prevented summary judgment holding: "if a jury were to believe the plaintiff's version of the events—namely, that the defendants, kicked him, used their tasers, a baton and OC spray on him and that the plaintiff did not threaten or actively resist the defendants—it could reasonably find that the defendants' use of force against the plaintiff was excessive."

In *Wielepski v. City of W. Allis, Wisconsin*, No. 17-CV-1004, 2018 WL 11206304, at *5 (E.D. Wis. July 23, 2018) the defendants' suggested that Mr. Wielepski posed a threat because he moved "toward the officers as they attempted to control him," which the court found was belied by Sergeant Corwin's dashcam video. The video showed Mr. Wielepski was standing still and facing Sergeant Corwin with his arms up when Corwin approached and yanked him by the shirt collar. As such, the court found a reasonable jury could thus conclude that Mr. Wielepski only moved toward the officers because Sergeant Corwin pulled him in that direction and that Mr. Wielepski reflexively placed his hands on the officers as he was drunkenly stumbling forward. *Id.* Moreover, the force used in *Wielepski*

was not limited to a Taser but rather included: grabbing him by the collar, Tasing him in the chest, striking his arm with a flashlight, physically taking him to the ground, being held face down on the ground, and being kneed in the ribs. *Id.*

In *Ferguson v. McDonough*, 13 F.4th 574, 582 (7th Cir. 2021) as Officer McDonough attempted to secure Ferguson's hands, Ferguson turned his head, questioned why he was under arrest, and lifted one hand out of the officer's grasp. A "tussle" ensued in which both men stumbled, and the court noted it was "hard to tell from the video why [Ferguson] is moving"—whether he was trying to escape, falling, tripping, or "some other reason." *Id.* The interaction unfolded within seconds as the officer repeatedly commanded Ferguson not to resist, struggled to control his hands, and ultimately deployed a single Taser cycle to Ferguson's chest when he stood up, leaned away, and raised his hands in front of him. *Id.* The Seventh Circuit found only that the video did not utterly discredit the district court's holding that a reasonable jury could find, that Ferguson was not actively resisting when Officer McDonough tased him. *Id.*

In short, no authority clearly establishes that deploying a Taser in this exact totality of circumstances is unconstitutional and Plaintiff's failure to cite a single case with remotely similar facts is fatal to his motion.

## CONCLUSION

Defendants' own summary-judgment motion (Dkt. 31) provides a detailed and complete basis for granting judgment in their favor on all claims, including excessive force, failure to intervene, malicious prosecution, and municipal liability. Plaintiff's motion does nothing to undermine those arguments. For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment must be DENIED, and summary judgment should instead be GRANTED for Defendants on the excessive force claim and all related claims.

Dated this 5th  day of December, 2025.

CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants Superior Police
Department Officers Justin Taylor, Taylor Gaard,
Sgt. Matthew Brown and City of Superior


By:  *Electronically signed by Kiley B. Zellner*
      SAMUEL C. HALL, JR.
      State Bar No.: 1045476
      KILEY B. ZELLNER
      State Bar No,: 1056806
      MAXWELL P. CONGDON
      State Bar No. 1139726
      710 N. Plankinton Ave., Suite 500
      Milwaukee, WI 53203
      Phone: 414-271-7722
      Email: shall@crivellocarlson.com
            kzellner@crivellolaw.com
            mcongdon@crivellolaw.com